In re BANZAI MFG. CO.

(Circuit Court of Appeals, Second Circuit. November 14, 1910.)

No. 50.

1. BANKRUPTCY (§ 288*)—JURISDICTION OF COURT—SETTLEMENT OF ACCOUNTS OF ASSIGNEE.

Where the assignee of an insolvent corporation, after it was adjudged bankrupt, consented to a reference of his accounts to the referee in bankruptcy and their settlement by the bankruptcy court, such court had jurisdiction to order him to pay to the trustee a sum found due from him to the estate on the accounting.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 288.*]

2. BANKRUPTCY (§ 288*)—ORDER COMMITTING FOR CONTEMPT—RIGHT TO NOTICE AND HEARING.

A person, ordered to pay over money to a trustee in bankruptcy as property of the estate, is entitled to notice and a hearing before judgment for contempt is entered against him for failure to obey such order; and a notice that an ex parte application for an order for punishment for contempt would be made, without stating time nor place, is insufficient.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 288.*]

3. BANKRUPTCY (§ 288*)—CONTEMPTS—ORDERS ENFORCEABLE BY CONTEMPT PROCEEDINGS.

An order of a court of bankruptcy, directing a prior assignee of a bankrupt corporation to pay over to its trustee a sum found to be due from him to the estate on a surcharging of his accounts, is not one which may be enforced by imprisonment for contempt as to items which he actually paid out in the administering of the property, although improvidently, and which it is admitted he no longer has in his possession.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 288.*]

Petition to Review Orders of the District Court of the United States for the Southern District of New York.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of the Banzai Manufacturing Company, bankrupt. On petition by Oscar B. Bergstrom to revise orders of District Court. Petition dismissed as to two orders. Third order reversed.

See, also, 100 C. C. A. 664, 177 Fed. 1002.

John M. Coleman (O. B. Bergstrom, of counsel), for petitioner.
Paul C. Schnitzler, for respondent.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. On October 8, 1907, petitioner was appointed assignee of the property and estate of the Banzai Manufacturing Company. He accepted the trust, took possession of the estate, and continued to act as assignee, conducting the business, until William H. Smith was appointed trustee in bankruptcy of the same company early in 1908. Thereupon all the property, papers, books of accounts, and assets belonging to the insolvent were delivered to the trustee in bankruptcy. Shortly afterwards petitioner filed a claim against the estate for a balance alleged to be due him, and also a statement of account as assignee, showing the items of receipt and disbursement which resulted in such alleged balance. The claim and the statement of account was sent to a referee as special master. At the outset of the hearing Bergstrom stated in response to questions that he was willing that the items of his account should be taken up with the referee, that he had no objection thereto, and that he would consent that his account be passed upon by the court. A number of hearings were had, witnesses were examined, and the referee reported that the account should not be passed but that Bergstrom be required to file a further account.

The District Court, on February 18, 1909, entered an order confirming the referee's report, and directing that Bergstrom file another and further account within 10 days, or be charged with $6,053.27. This time was extended by the court, and on April 20, 1909, he moved for an order, referring his accounting as assignee to the referee, and an order to that effect was made April 29, 1909. A number of hearings were had, further testimony was taken, and the referee on November 30, 1909, made a report that the difficulty of accounting had been greatly enhanced by the methods of the assignee in allowing the business to be conducted by other persons, instead of himself personally; that there was nothing brought out on the second accounting which called for any modification of his first report, in which he had found that Bergstrom should be charged with $6,053.27, and should not be credited with the various payments and expenditures, which, as he alleged, exhausted this amount, because the items "salaries," "wages," "rent," etc., were not shown to have been "properly made in the execution of his trusts." On January 5, 1910, the District Court confirmed this second report, and ordered that the prior order of February 18, 1909, directing Bergstrom to pay $6,053.27, be "in all respects confirmed." These two orders of February 18, 1909, and January 5, 1909, are those in respect to which it is contended that petitions to revise were not filed in time.

It will not be necessary to examine the questions raised upon the

motion to dismiss, because it is apparent from the above narrative of transactions that Bergstrom consented to a judicial examination of the items of his account by the referee and the court, and is therefore bound by their determination of the question whether, as a result of his transactions as assignee, the estate of the Banzai Company owed him or he owed the estate. Of course, if he owed the estate, it was proper to direct him to pay the amount due to the trustee in bankruptcy, who had taken title to that estate. Errors in determining the items which made up the amount found to be due would be reviewable; but this petition does not bring up any such questions, nor does the brief of counsel discuss a single item of the amount surcharged against Bergstrom.

On January 12, 1910, a copy of the order of January 5, 1910, was served on Bergstrom and his attorney, and with it was served a written demand for payment, coupled with a "notice" that upon failure to comply with the orders of February 19, 1909, and January 5, 1910, application would be made to the District Judge "ex parte for an order directing the punishment of Oscar B. Bergstrom for contempt of this court in refusing to comply with the said orders." The notice did not state when or where such application would be made, except that such application would be ex parte. Bergstrom did not pay the money, whereupon, on January 19, 1910, upon the former orders and affidavits of the trustee and his counsel, showing noncompliance with the orders, the District Judge adjudged Bergstrom in contempt for failure to comply, and directed a warrant to issue to the marshal to commit him to close custody until the sum found due by him be discharged. He was taken into custody and so held until he made a deposit with the marshal of $6,290.47 to obtain his enlargement pending review by this proceeding.

The Court of Appeals in the First Circuit had a similar order before them in First Nat. Bank of Biddeford v. Cole, 144 Fed. 392, 75 C. C. A. 330, where a bankrupt had been adjudged in contempt for failing to pay over money of the estate which it was alleged she had in her possession. The court held that the issue whether an order should run against the bankrupt, requiring her to make payment to the trustee, is of a purely civil character, and therefore that part of the order before them which directed payment may be supported by a mere preponderance of evidence, presumptions, or inferences. As to the other part of the order the court (Putnam, C. J., writing) said:

"We think, however, that there was error, in that the District Court entered in substance a judgment for contempt, accompanying an affirmative order for committal. It is plain that a proceeding for contempt is of a different character from one resulting in a mere order for the payment of money to a trustee in bankruptcy. It is claimed that it is criminal in nature, while an order for the mere payment of money is purely civil; that it would be justified only by the proofs, and the amount of proofs, requisite on ordinary criminal issues; and that it is in effect an independent proceeding, which can be initiated only after an order for payment of money has been disobeyed, and an order to show cause, or some other new notice, given to the person alleged to be in fault. It is sufficient now to say that the record does not show that Mrs. Cole had any day in court on the issues involved in that part of the order in question. Without undertaking to say in what manner the issue may be so pre-

sented as to justify a proceeding for an alleged contempt, and entering a penal judgment on account thereof. we are of the opinion that the record should show that the issue had been made in some way, and that the person adjudged guilty of contempt had had an opportunity to be heard in reference thereto. Rapalje on Contempts (1881) 126, 127, 128. For this reason, the order to which the petition relates must be annulled, except only so far as it confirms the decision of the referee, which directed that the money in question should be paid to the trustee."

The same point was considered incidentally by this court, in Re Stavrahn, 174 Fed. 330, 98 C. C. A. 202, and we expressed the opinion, touching orders of commitment for disobedience of orders directing the turning over to the trustee of money or other property of the bankrupt:

"Of course, he should have notice of the motion to punish him for such disobedience, and have his day in court, when he may present what he may have to urge against such motion and an opportunity to be heard."

See, also, In re Hausman, 121 Fed. 984, 58 C. C. A. 260.

In the case at bar Bergstrom had his "day in court" on the question whether or not he owed the estate money which he should pay to the trustee; but he certainly, so far as this record shows, has not had his day in court on the question whether he should be committed to jail for failure to pay such money. For that reason the order of January 19, 1910, should be reversed.

The result of this decision will presumably be to bring the question of contempt again before the District Judge on proper notice to Bergstrom. It seems, therefore, desirable that there should be an expression of opinion upon another branch of the case which has been fully argued before us. The sum of money, $6,053.27, which Bergstrom was ordered to turn over to the trustee, was not entirely money or property of the bankrupt which he has in his possession. Some of the items may come within that category. For instance, he charged the estate with $330 for commissions to himself for his services as assignee. Since he has not paid that sum out to any one except himself, it may be considered as still in his possession. Possibly there are other similar items; but the great bulk of the amount found due from him consists of payments which he made to others out of the proceeds of the estate while it was in his possession, which payments the referee and the court have found were improvidently made, and therefore should be surcharged against him.

Counsel for the trustee conceded on the argument that substantially the entire claim against Bergstrom consisted of such surcharges. He was not an officer of the District Court, carrying out trusts with reference to an estate which that court had committed to him. He had prior to bankruptcy come into possession of the property of the bankrupt; but, so far as this record shows, that property had also prior to bankruptcy passed out of his hands, mainly in payment of expenditures for salaries, wages, rents, merchandise, etc., incurred while carrying on the bankrupt's old business with the property he received. By reason of his improvident conduct in so doing it has been found that he ought to make good to the estate the whole or the greater part of these disbursements, and he is a debtor to the es-

tate for that amount; but it does not necessarily follow that his indebtedness is of such a sort that he may be imprisoned for nonpayment. The situation differs from that which has frequently come before the courts where a person—the bankrupt or some one else—has had property of the estate in his possession and testifies that he had paid it out or distributed it in some way, but the referee and the District Judge have disbelieved his testimony, and have ordered him to return the property or be imprisoned for disobedience to such order.

It is not understood that in the case at bar the trustee disputes the statement of Bergstrom that he actually did pay out the money, or substantially all of it. More would be required than appears in this record to warrant an order punishing Bergstrom for failure to pay $6,053.27 which he owes the estate as a result of his transactions while assignee.

The order of January 19, 1910, is reversed.